UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CENTRAL STATES, SOUTHEAST and
SOUTHWEST AREAS PENSION FUND
and HOWARD McDOUGALL, Trustee,

        Plaintiffs,

v.

JOHN R. CONCRETE & SUPPLY
COMPANY and JOHN R. SAND &
GRAVEL COMPANY,

        Defendants.

Case No. 08-13896
Honorable Laurie J. Michelson

---

**OPINION AND ORDER CLARIFYING JULY 14, 2014 ORDER [72]**

---

Five years ago, Plaintiffs Central States, Southeast and Southwest Areas Pension Fund and Howard McDougall, an employee pension fund and its trustee, obtained a $430,000 judgment in this case against Defendants John R. Concrete & Supply Company and John R. Sand & Gravel Company. Plaintiffs explain that they have attempted to collect on the judgment, but the amounts they have collected have not even covered post-judgment interest. More than four years after judgment was entered, Plaintiffs filed an ex-parte motion to proceed supplementary to the judgment. In that motion, Plaintiffs asked United States District Judge Julian Abele Cook, Jr., who was previously presiding over this case, to enjoin Defendants from alienating any of the companies' property "not exempt by law" until Defendants satisfied the judgment. Judge Cook recently granted Plaintiffs' motion.

Two days after the case was reassigned to this Court, Defendants sought clarification of Judge Cook's order. They say it is unclear which of their assets are exempt from the restraining order. (Dkt. 74, Defs.' Mot. for Clarification; Dkt. 76, Defs.' Br. in Supp. of Mot. for

Clarification.) The motion is fully briefed and the Court finds that oral argument will not significantly aid in resolving the parties' dispute. For the reasons that follow, the Court GRANTS Defendants' motion for clarification and provides the following clarification of Judge Cook's order.

## I.

The Complaint, filed in September 2008 in a federal court in Illinois, alleged that Defendants incurred "withdrawal liability" under the Employee Retirement Income Security Act of 1974 ("ERISA") for failing to contribute to the Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund"). (Dkt. 1, Compl.)

After the case was transferred to this District and assigned to Judge Cook, Plaintiffs moved for summary judgment. They argued (1) that John Concrete and John Sand were a "brother-sister control group" (2) that the control group failed to make contributions to the Pension Fund, (3) that the control group thus ceased to have an obligation to contribute to the Pension Fund, (4) that this amounted to a "complete withdrawal" from the Pension Fund under ERISA, (5) that "all individuals and entities constituting the" control group, including John Concrete and John Sands, "incurred withdrawal liability to the Pension Fund in the principal amount of $317,348.25," (6) that the control group was given notice of this liability, and (7) that "Defendants waived all challenges to the withdrawal liability assessment when they failed to timely initiate arbitration pursuant to ERISA Section 4221(a)(1)." (Dkt. 5, Pls.' Mot. Summ. J. at 4–7, 12.)

In April 2009, Judge Cook held a hearing and granted summary judgment in favor of Plaintiffs for reasons he articulated at the hearing. (*See* Dkt. 12.) In August 2009, Judge Cook entered an amended judgment in favor of Plaintiffs "for an amount of $434,439.12, which

consists of (1) $317,348.25 in withdrawal liability, (2) $41,930.72 in interest, (3) $63,469.65 in liquidated damages, (4) $10,736.00 in attorneys' fees, and (5) $954.50 in costs." (Dkt. 16.)

The docket reflects that between August 2009 and December 2013, Plaintiffs tried to collect on this judgment. Plaintiffs explain that they took depositions of each of the Defendants' representatives, subpoenaed Defendants' financial information, and "served numerous garnishments on various third parties." (Dkt. 66, Pls.' Br. re Mot. to Proceed Supplementary to J. at 5.) Plaintiffs say that these actions resulted in collecting $45,426.70, all of which they applied to post-judgment interest. (*Id.*) Plaintiffs assert, "As of September 5, 2014, the Defendants owe the total amount of $504,453.66 to the Pension Fund, consisting of the $434,439.12 judgment balance, plus $70,014.54 for post-judgment interest." (Dkt. 77, Pls.' Resp. to Defs.' Mot. for Clarification Ex. A, Napoli Aff. ¶¶ 3–4.)

Defendants do not dispute the amount owed, but paint a different picture regarding their efforts and ability to comply with the judgment. They say that they have provided Plaintiffs with "thousands of pages of documents," including "General Ledgers, tax returns, mortgages, deeds, promissory notes, and liens." (Dkt. 67, Defs.' Resp. to Pls.' Mot. to Proceed at 3.) They further explain that John Concrete is no longer in operation, and that John Sands' profits from working a gravel pit are "little, if any." (*Id.* at 3.) Defendants say that they have "continuously requested" that Plaintiffs' enter into a payment plan, but Plaintiffs are not interested. (*Id.* at 3.) According to Defendants, paying the judgment in a lump sum is financially impossible, and, further, Citizens State Bank "advanced over $300,000.00 to Defendants on July 31, 2007 and has a first position security interest in *all* of Defendants['] assets." (*Id.* at 3; *see also id.* at 4–5.)

In December 2013, Plaintiffs filed a motion pursuant to Federal Rule of Civil Procedure 69 to proceed supplementary to the judgment. The Rule provides in relevant part, "A

money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1). In turn, Michigan Court Rule 2.621 provides, "When a party to a civil action obtains a money judgment, that party may, by motion in that action or by a separate civil action . . . (2) obtain relief supplementary to judgment under MCL 600.6101–600.6143 and (3) obtain other relief in aid of execution authorized by statute or court rule." Thus, pursuant to Federal Rule of Civil Procedure 69, Michigan Court Rule 2.621, and Michigan Compiled Laws §§ 600.6104, 600.6110(1), and 600.6116(1), Plaintiffs asked Judge Cook to issue the following order:

> (a) That Judgment Debtors John Concrete and John Sand be restrained from taking any action to transfer, encumber or dispose of, or place outside this Court's jurisdiction, any property *not exempt by law*, whether now owned or hereafter acquired until satisfaction of the Judgment; and

> (b) For such further or different relief as this Court may deem proper and just.

(Dkt. 66, Pls.' Mot. to Proceed Supplementary to J. at 3 (emphasis added); *see also id.* at 6–7.)

On July 14, 2014, Judge Cook granted Plaintiffs' motion (the "July 2014 Order"). (Dkt. Dkt. 72, July 2014 Order.) In so doing, Judge Cook relied on Michigan Compiled Laws § 600.6104. (*See* July 2014 Order at 2–3.) In relevant part, that statute provides:

> After judgment for money has been rendered in an action in any court of this state, the judge may, on motion in that action or in a subsequent proceeding . . .

> (5) Make any order as within his discretion seems appropriate in regard to carrying out the full intent and purpose of these provisions to subject any *nonexempt assets* of any judgment debtor to the satisfaction of any judgment against the judgment debtor.

Mich. Comp. Laws § 600.6104 (emphasis added). Regarding exempt and nonexempt assets, Judge Cook explained,

4

In their response, the Defendants first maintain that this motion should be denied because they have already provided evidence to the Plaintiffs that they do not own any assets that are not exempt from judgment. The fact that the Defendants' current assets may be exempt, however, is not a sufficient reason to deny this motion. The Plaintiffs' proposed order will not apply to exempt assets, but if the Defendants come into possession of non-exempt assets in the future, the proposed order will protect the interest of the Plaintiffs in recovering the judgment debt.

(July 14, 2014 Order at 4.) The July 2014 Order concludes, "For the reasons that have been set forth above, the Court grants the Plaintiffs' ex parte motion for proceeding supplementary (ECF No. 66)." (July 14, 2014 Order at 5.)[1]

Defendants now ask this Court to clarify Judge Cook's order. More specifically, they ask this Court to opine on the following: "(1) the meaning of 'non-exempt' assets under the Court's Order; (2) the Defendants' ability to comply with the [July 2014] Order and carry on its day-to-day business; and (3) an explanation of the Order's applicability to Defendants' secured creditors." (Dkt. 78, Defs.' Reply to Pls.' Resp. to Mot. for Clarification at 3.) Defendants explain that since they filed their motion, they have "retained bankruptcy counsel and have ceased all business operations. Given Defendants['] failure to operate, generate revenue, and pay bills, Defendants are in a precarious financial position and must clarify their intentions vis-à-vis their secured creditors as soon as possible to either arrange for past due payments to be made or

---

[1] As noted, in their motion to proceed supplementary to the judgment, Plaintiffs additionally relied on Michigan Compiled Laws § 600.6116(1). (Dkt. 66, Pls.' Mot. to Proceed Supplementary to J. at 7.) That provision provides:

> An order for examination of a judgment debtor may contain a provision restraining the judgment debtor from making or suffering any transfer or other disposition of, or interference with any of his property then held or thereafter acquired by or becoming due to him not exempt by law from application to the satisfaction of the judgment, until further direction in the premises, and such other provisions as the court may deem proper.

Mich. Comp. Laws § 600.6116(1). It appears that Judge Cook did not rely on this provision in granting Plaintiffs' motion. (*See* July 14, 2014 Order at 2–3 (citing only Mich. Comp. Laws § 600.6104); *id* at 4.)

to surrender equipment or other assets encumbered by security interests." (Dkt. 76, Defs' Br. in Supp. of Mot. for Clarification at 1.)

## II.

Defendants assert that this Court has authority to clarify the July 2014 Order under Federal Rules of Civil Procedure 60(a), 60(b)(1), and 60(b)(6). (*See* Dkt. 76, Defs.' Br. in Supp. of Mot. for Clarification at 3–4.) Defendants also say that this Court has inherent authority to clarify its interlocutory orders. (*Id.* at 4–5.) Plaintiffs do not challenge this Court's power to clarify the July 2014 Order, only the necessity of doing so. (*See generally* Dkt. 77, Pls.' Resp. to Mot. for Clarification.)

Given that the parties do not dispute this Court's ability to clarify the July 2014 Order, that there has been no showing of detrimental reliance on the order by Plaintiffs, and that the order potentially has a significant impact on John Sands' continued operation, this Court will exercise its equitable powers to clarify the order. *Cf. Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 647 (1961) ("There is also no dispute but that a sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen. The source of the power to modify is of course the fact that an injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief."); *Agro Dutch Indus. Ltd. v. United States*, 589 F.3d 1187, 1192 (Fed. Cir. 2009) ("As a general matter, a court of equity may exercise its sound discretion to modify an injunctive order when modification is necessary to achieve the order's intended purpose and does not otherwise result in prejudice to a party.").

6

## III.

The crux of Defendants' motion is that the term "nonexempt" is not defined in the July 2014 Order or in the Michigan statutes relating to proceedings supplementary to a judgment. Defendants assert that Michigan Compiled Laws § 600.6023 is the "only" statutory provision "describ[ing] what 'exempt' assets are," and that provision "clearly applies to individuals and not to corporations." (Dkt. 76, Defs.' Br. in Supp. of Mot. for Clarification at 5.)

Plaintiffs agree with Defendants that § 600.6023 "sets forth what assets are exempt." (Dkt. 77, Pls.' Resp. to Mot. for Clarification at 7.) They disagree with Defendants, however, on the applicability of § 600.6023 to corporations: "Section 600.6023(1) clearly states that it applies to all 'judgment debtors.' The provision does not distinguish between individual and corporate judgment debtors. Thus, regardless of whether the judgment debtor is a corporation or an individual, Section 600.6023(1) applies." (*Id.*) Plaintiffs apparently take this position because they believe that none of the twelve exemptions set forth in § 600.6023 would hinder their attempts to collect from Defendants.

The Court agrees with Plaintiffs that none of the exemptions in § 600.6023 appear to apply to companies such as Defendants. But the Court does not agree that § 600.6023 applies "regardless of whether the judgment debtor is a corporation or an individual." Subsection (1) of § 600.6023 begins, "The following property of a judgment debtor and the judgment debtor's *dependents* is exempt from levy and sale under an execution . . . ." (Emphasis added.) Subsection (1)(a) exempts from judgment "[a]ll *family* pictures." (Emphasis added.) And subsection (1)(b): "All *household* goods, furniture, utensils, books, and appliances, not exceeding in value $1,000.00" (Emphasis added.) And (1)(c): "A seat, pew, or slip occupied by the judgment debtor or the judgment debtor's family in a house or place of public worship." There are many more

7

examples, but it suffices to point out that other exemptions include the judgment debtors' two cows, the tools and horses to enable "a person" to carry on the profession, his homestead, his insurance benefits relating to his "injury or sickness," and his "individual retirement account." Mich. Comp. Laws § 600.6023(1)(d), (e), (f), (g), (j). A common-sense reading therefore supports that § 600.6023 does not apply to corporations. *See In re Certified Questions from U.S. Court of Appeals for the Sixth Circuit*, 416 Mich. 558, 567, 331 N.W.2d 456, 461 (1982) ("If the language used is clear and the meaning of the words chosen is unambiguous, a common-sense reading of the provision will suffice, and no interpretation is necessary.")

But the applicability of § 600.6023 to Defendants is not dispositive. Defendants' position appears to be that because § 600.6023 does not apply to corporate judgment debtors, and because they could not otherwise locate any statutory provision providing exemptions for companies, this Court has the ability to (and should) craft at least two exemptions: (1) that assets used in the ordinary course of business are exempt from the judgment and (2) that assets in which Citizens State Bank holds a security interest are exempt from the judgment. (*See* Defs.' Br. in Supp. of Mot. for Clarification at 5.) The Court declines Defendants' invitation for two reasons.

First, as noted, Judge Cook's order was pursuant to Michigan Compiled Laws § 600.6104, and Defendants have not cited any case law or other authority construing the phrase "nonexempt assets" as that term appears in § 600.6104(5) to exclude a company's expenditures made in the usual course of business or a company's assets in which a creditor holds a secured interest. Indeed, Defendants "candidly" state that they "could not find any case law outlining what assets are exempt and what assets are not." (Defs.' Mot for Clarification at 5.) Nor have Defendants cited any authority indicating that at common law, assets used in the ordinary course of business or used as a security were exempt from a judgment creditor's collection efforts. (In

8

fairness, this Court and, apparently, Plaintiffs have found no case law interpreting "nonexempt assets" as that term appears in § 600.6104(5), let alone case law declaring whether a company's expenditures made in the usual course of business, or a company's assets in which a creditor holds a secured interest, are exempt.)

More importantly, as Plaintiffs point out, the state legislature contemplated that corporations would be judgment debtors. (*See* Pls.' Resp. to Mot. for Clarification at 7.) Indeed, the chapter of the Revised Judicature Act of 1961 pertaining to "Enforcement of Judgments" explicitly provides that a judgment may be executed against "corporate property":

> Except as otherwise provided by law, execution may be made against all personal property of the judgment debtor that is liable to execution at common law, including, but not limited to the following: . . .
>
> (4) In the case of an execution against a corporation, all corporate property.

Mich. Comp. Laws § 600.6017. The fact that the Michigan legislature was aware that the personal property of a corporation could be subject to an execution of a judgment, but did not provide statutory exemptions of the variety that Defendants seek, dissuades the Court from creating those exemptions. *See Petteys v. Butler*, 367 F.2d 528, 538 (8th Cir. 1966) (Blackmun, J., dissenting) ("[I]f the Congress intended to provide additional exceptions, it would have done so in clear language . . . ."); Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 93 (1st ed. 2012) ("Nothing is to be added to what the text states or reasonably implies (*casus omissus pro omisso habendus est*). That is, a matter not covered is to be treated as not covered."). And, again, Defendants have cited no case law indicating that their proposed exemptions were available at common law. (*See* Defs.' Mot. for Clarification at 5.) Indeed, Michigan law appears to be directly contrary to Defendants' position that if a secured creditor

has priority in certain corporate assets, those assets should be deemed exempt from the judgment:

> Except as otherwise provided by law, execution may be made against all personal property of the judgment debtor that is liable to execution at common law, including, but not limited to the following: . . .

> Goods or chattels pledged by way of mortgage or otherwise, for the payment of money, or the performance of any contract or agreement, but only as against the pledgor and subject to the lien, mortgage or pledge existing thereon.

Mich. Comp. Laws § 600.6017.[2]

In short, Defendants have not persuaded the Court that those assets they use in the ordinary course of business, or those assets in which creditors hold a security interest, are shielded from collection under the July 2014 Order and Michigan Compiled Laws § 600.6014.

**IV.**

For the foregoing reasons, the Court HEREBY clarifies the July 14, 2014 Order as follows: Defendants John Concrete and John Sand are restrained from taking any action to transfer, encumber or dispose of, or place outside this Court's jurisdiction, any property not exempt by law, whether now owned or hereafter acquired until satisfaction of the amended judgment entered on August 11, 2009; the property that John Sands uses in the ordinary course of business is not exempt by law; the property of Defendants in which creditors hold a security interest is not exempt by law.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  October 6, 2014

---

[2] The Court notes that Plaintiffs have acknowledged that simply because assets are not exempt from judgment does not mean that their interests as judgment creditors have priority over those of Citizens State Bank: "[to] the extent [Citizens State Bank] or another creditor has a senior security interest in Defendants' assets that has been perfected, the Pension Fund recognizes that its lien will be subject to those liens." (Pls' Resp. to Mot. for Clarification at 11.)

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 6, 2014.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson